29 C.C.P.A. (Patents)

## In re LINCOLN et al.

**Patent Appeal No. 4572.**

Court of Customs and Patent Appeals.
March 23, 1942.

Thomas E. Scofield, of Kansas City, Mo., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Judge.

In this case the Board of Appeals of the United States Patent Office affirmed a decision of the Primary Examiner rejecting all of the claims of appellants' application, numbered 8 to 14, inclusive, and 23. The claims are all method claims except claim 14, which is for a compound.

Claims 8, 14, and 23 are illustrative and read as follows:

"8. A continuous method of synthesizing halogenated organic amino compounds from refinery gases, including the steps of selectively absorbing an olefine from refinery gases containing the same, stripping the absorbed olefine from the absorbing medium, continuously generating nitrogen trichloride and contacting the olefine with nitrogen trichloride."

"14. 1 chloro 2 amino pentane."

"23. A method of synthesizing organic amino compounds from refinery gases including the steps of selectively absorbing an olefine from refinery gases containing the same, stripping the absorbed olefine from the absorbing medium, continuously generating nitrogen trichloride, contacting the olefine with nitrogen trichloride, subjecting the product of this reaction to a reduction step, contacting the reduced material with a substituting agent selected from a class consisting of aqueous alkalies, alcoholic alkalies, metal cyanides, alkali metal alcoholates, sulphides, hydrosulphides and xanthates of alkali metals."

The references cited are:

"Chemical Abstracts", Vol. 21, p. 848 (Abstract of Proc. Iowa Acad. Sci., Vol. 32, pp. 325–6, 1925).

"Chemical Abstracts," Vol. 21, p. 903, (Abstract of Proc. Iowa Acad. Sci., Vol. 32, p. 326, 1925).

Magidson et al. in "Chemical Abstracts," Vol. 28, p. 3477, 1934 (Abstracts of "Arch. Pharm.," Vol. 272, pp. 74–84, 1934.

Beilstein-Prager-Jacobson; Organische Chemie (4th Edition) Vol. IV, p. 175, 1923

(Abstract of "Journal der Russischen Physikalisch-Chemischen Gesellshaft," Vol. 38, p. 609.)

Appellants' alleged invention is described in the decision of the Board of Appeals as follows:

"The appealed claims relate to a method of synthesizing aliphatic amines and their derivatives from unsaturated lighter hydrocarbons particularly olefines and the product. Applicants first subject a mixture of light olefines to selective absorption by varying strength solution of sulphuric acid as in the sections of the absorption tower 2. The several extractions are then subjected to separate distillation to respectively drive off the several olefines such as ethylene, propylene, butylene and amylene. These separated olefines are then separately treated to nitrogen trichloride and the product may then be treated with a reducing agent such as hydrogen chloride. This produces a product of the type of that of claim 14."

The publication—"Chemical Abstracts"— discloses the treatment of 2-butene, which is an olefine, and of "various types of olefine hydrocarbons" with nitrogen trichloride. Vol. 21 of said abstracts also discloses the treating with hydrogen chloride of the product resulting from the reaction of olefine hydrocarbons with nitrogen chloride.

The references Beilstein et al. and Magidson et al. disclose homologues of the compound set forth in claim 14.

Appellants make no claim that they have discovered that olefines may be reacted with nitrogen trichloride. The grounds on which they claim that the method claims are patentable are concisely stated in two paragraphs of their brief which read as follows:

"It seems too clear for extended argument that applicants are not claiming to have discovered that olefines may be reacted with nitrogen trichloride. In the first instance, there is disclosed a continuous method, one in which the starting material is refinery gases. From these refinery gases, olefines are selectively absorbed and then stripped from the resulting medium.

"Nitrogen trichloride is continuously generated and then continuously contacted with the olefines which are thus recovered. No semblance of such process appears in the art and it is submitted that the decision on this point is clearly untenable."

We think the above quotation correctly presents the question before us, viz., whether invention is involved in obtaining olefines from refinery gases, continuously generating nitrogen trichloride and continuously contacting the olefines with the same, and then with hydrogen chloride or other reducing agent.

We will first consider method claims 8 to 13, inclusive, each of which embraces the above process.

The examiner in his statement discussing these claims stated:

"Claims 8 to 13 are rejected as being drawn to the old, unpatentable combination of (1) obtaining an olefine (2) reacting said olefine with nitrogen trichloride and then (3) treating the product with hydrogen chloride to form a chlor-amine. 'Chemical Abstracts', Vol. 21, p. 848, discloses this combination since the step (1) of obtaining the olefine is inherent in the process of the reference. It does not matter *how* the olefine is produced nor where it is obtained. Olefines produced in any manner are operative in steps 2 and 3. Merely operating the old process in a continuous manner is not seen to impart invention in the absence of a showing of *unexpected* beneficial results. It is not argued that applicants' process is not unitary but merely that the *combination* is old. Although applicants are entitled to claim any improvement which they may make in the combination, they are not entitled to claim the entire combination. Although applicants may carry out some of the steps, (step 1) in a somewhat different manner and although the *source* of the original material may differ, the *combination* of steps is the same as that employed in the prior art. Although applicants state, in argument, that their method is a synthesis of amino compounds from refinery gases, the fact is that the *olefines* in the refinery gases are the starting materials, not the entire mixture of gases, since the olefines alone are reactive in the claimed process. It is well known that olefines are present in refinery gases, hence, it is not seen to be patentable to obtain these olefines from the gases and by an old series of reactions to form amino compounds therefrom. Regardless as to what the source of applicants' olefine starting material is, applicants' process is that of the old combination disclosed by the prior art. In this rejection of applicants' process as an old combination it is not seen that the cited decisions are in point. These

process claims are not rejected solely upon the ground of 'not involving invention' but are rejected as being drawn to an old combination. Applicants' contribution is not the entire combination but is in the step of obtaining the olefine starting material from refinery gases (where they are known to occur)—See Schiller v. Robertson, D. C., 28 F.2d 301, and in re McNeil, 1902 C.D. 563.

"Applicants' invention would not utilize the 'millions of cubic feet' of refinery gases wasted every day but would only recover the fraction of these gases which are olefines and would do that by a process which the prior art discloses as being operative with olefines."

The Board of Appeals in its decision stated:

"After careful consideration we are in complete agreement with the examiner's view. We believe it is obvious and not proven to the contrary by the record that the step of segregating particular olefines is of general utility not dependent upon treating them subsequently by this method and conversely that olefines derived from any source would react the same with nitrogen trichloride as well as where associated with applicants' particular step of separation. We do not overlook applicants' contention that the olefines from petroleum cracking processes may be a by-product of small value and that this is an effective way of utilizing them, but this is not regarded as sufficient to impart patentability contrary to the general rule of law where no new or unobvious result appears to be produced. The association of the second step of treating with the so-called reducing agent or hydrogen chloride of some of the claims is of no avail in overcoming the situation of unpatentable combination in respect to the first two steps. The same is true in regard to the fact that applicants carry the process on as a continuous one. Whether continuous or not the result appears the same. * * *"

We are in full accord with the view of the Patent Office tribunals that the essential elements of appellants' combination are: (1) obtaining an olefine, (2) reacting said olefine with nitrogen trichloride, and (3) treating the product with hydrogen chloride or other reducing agent.

As observed by the examiner, the obtaining of the olefine is inherent in the references, and it is immaterial, so far as the true combination is concerned, how the olefine is produced or where it is obtained.

If appellants have invented a new method of obtaining olefines from refinery gases, they may be entitled to a separate patent therefor; that question is not before us. So far as the combination before us is concerned, appellant's starting material is the olefines in the refinery gases, for it is only the olefines, so far as the record discloses, that react with nitrogen trichloride, and olefines produced in any manner are operative in steps (2) and (3) of the claims. In re Germantown Trust Company, etc., 57 F.2d 365, 19 C.C.P.A., Patents, 1140; Schiller v. Robertson, D.C., 28 F.2d 301; In re Grapp, 64 F.2d 376, 20 C.C.P.A., Patents, 1042.

Therefore, the obtaining of the olefines being old, and each of the other steps being shown by the prior art, we are in agreement with the view of the Patent Office tribunals that claims 8 to 13, inclusive, were properly rejected as being drawn to an old, unpatentable combination.

In so holding we have not overlooked the element of continuously generating nitrogen trichloride. We agree with the board that the results of the process are the same whether the nitrogen trichloride is continuously generated or is separately supplied after its generation; and as observed by the examiner, merely operating the process in a continuous manner does not render the combination inventive in the absence of a showing of unexpected beneficial results.

Coming next to claim 14, which is for the chemical compound—1 chloro 2 amino pentane—the examiner, with respect to his final rejection of this claim, stated as follows:

"Claim 14 is again rejected as lacking in invention over each of 'Beilstein' and Magidson et al. of record for the reasons of record. Although applicants' compound may be novel, in the absence of a verified showing of unexpected properties, there is no invention seen in the compound over the lower homologue disclosed in 'Beilstein' and the N-diethyl isomeric compound disclosed by Magidson et al. That applicants' process will not produce the compounds of the prior art is beside the point, since applicants' product, not process, has been rejected on the references. * * *"

In his statement the examiner said:

"* * * The compounds of the prior art and that of applicants differ only by the presence and/or position of an alkyl group. The reactive groups which give the compounds *its* [their] characteristics are the same and similarly positioned in all of the compounds. In the absence of a showing of unexpected properties, there is no invention seen in the claimed product over the compounds of the cited prior art. Novelty alone does not constitute invention. * * *"

■ Appellants' brief does not challenge this statement of the examiner, but apparently relies for patentability alone upon the novelty of their compound. It is elementary that novelty alone is not sufficient to impart patentability to a claim.

■ Appellants had the opportunity in their prosecution of their case, under rule 66 of the rules of the Patent Office, 35 U. C.S.A.Appendix, to challenge the statement of the examiner that the reactive groups in appellants' compound and in the compounds of the references which give to the compounds their characteristics are the same and are similarly positioned in all of the compounds. Having failed to do this, and, as held by the examiner, there being no showing in the record that appellants' compound has any unexpected beneficial results, we cannot find error in the rejection of claim 14 in view of the references cited.

The last claim for consideration is claim 23. The examiner stated one of the grounds of rejection of this claim as follows:

"Claim 23 is further rejected as being drawn to a species other than that elected, since the process of claim 23 does not produce the chloro-amino compound of elected claim 14, group I, (see p. 6 of letter of October 3, 1938, Paper No. 6) but as above pointed out produces, amino-alcohols, -ethers, -cyanides, -xanthates, -mercaptans and -sulfides, and unsaturated amines. Hence applicants are precluded from further prose-cuting this claim in this application in the absence of an allowable generic claim."

The record shows that during the prosecution of this claim it was rejected upon the ground of estoppel, the examiner stating:

"Claim 23 is again rejected on the ground of estoppel as set forth in the last office action. The chloroalkyl amine of claim 14

is the elected invention, the process of claim 23 is not drawn to the final production of this amine, but to the formation of such products as intermediates followed by further reaction to produce other compounds, not of the elected class."

In appellants' appeal to the Board of Appeals they assigned error in their reasons of appeal as to this ground of rejection. The board in its decision stated:

"* * * The requirement that division would be necessary between claim 23 and claim 14 if found allowable is obviously applicable in the absence of allowance of a claim that might be regarded as clearly generic."

The board gave a general affirmance of the examiner's decision.

Appellants in their reasons of appeal have assigned no error with respect to the ground of rejection of this claim by the examiner as above set forth.

Upon motion of appellants after the argument of the case, certain portions of the record were brought here by certiorari which relate to claim 23. However, we find nothing in them affecting our conclusion herein.

Appellants contend that, in view of the language of the board above quoted, no reason of appeal with respect to the rejection of this claim upon the ground of estoppel was necessary.

■ While we think that the board's statement, above quoted, was unhappily worded, as it did not accurately state the ground of rejection of this claim by the examiner, we cannot construe the language of the board as in any way reversing the rejection of this claim by the examiner upon the ground of estoppel. As hereinbefore noted, the board gave a general affirmance of the examiner's decision, and under the rule declared in the case of In re Wagenhorst, 64 F.2d 780, 20 C.C.P.A., Patents, 991, and in a number of subsequent decisions by us, we must hold that the general affirmance by the board of the examiner's decision constituted an affirmance of his rejection of claim 23 upon the ground of estoppel.

■ Therefore, there being no reason of appeal assigning error in rejecting claim 23 upon the ground of estoppel, the correctness of such rejection is not before us; and as such rejection is a bar to the allowance of the claim in the application before us it is not necessary for us to con-

sider other grounds of rejection of this claim.

For the reasons stated herein, the decision of the Board of Appeals is affirmed.

Affirmed.