31 C.C.P.A.(Patents)

## In re HASS et al.

### Patent Appeal No. 4819.

Court of Customs and Patent Appeals.

Feb. 7, 1944.

See, also, 141 F.2d 127; 141 F.2d 130.

Henry C. Parker, of Washington, D. C. (John Boyle, Jr., of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 1, 2, and 3) in appellants' application for a patent for an alleged invention relating to new and useful nitroolefins.

The claims read:

"1. Nitroolefins having the general structural formula:

$$\underset{R — \overset{H}{\underset{|}{C}} = \overset{NO_2}{\underset{|}{C}} — CH_3}{}$$

wherein R is a member of the group consisting of hydrogen and an alkyl group having in excess of one carbon atom.

"2. 2-Nitropropene.

"3. 2-Nitro-2-hexene."

The references cited in the record and relied upon by the Primary Examiner are: Beilstein's "Handbuch", 4th. Ed. 1918, Vol. I, page 213; Beilstein's "Handbuch", 4th. Ed. 1918, Vol. V, page 483; Weiland, "Ber. deutsch. Chem. Ges.," Vol. 52, pages 899 to 902 (1919); Henry, "Chem. Centralblatt," 1897 I, page 741; Angeli et al. "Chem. Centralblatt," 1910 II, page 732; Kanao, "Chem. Abstracts," Vol. 22, pages 1588–1589 (1928); Schmidt, "Chem. Abstracts," Vol. 23, page 372 (1929).

It appears from the record and the briefs of counsel that claim 1 covers a series of chemical compounds, including the compounds covered by claims 2 and 3; that the formula for the compound of claim 2 is

$$H — \overset{H}{\underset{|}{C}} = \overset{NO_2}{\underset{|}{C}} — CH_3;$$

that the formula for the compound of claim 3 is

$$C_3H_7 — \overset{H}{\underset{|}{C}} = \overset{NO_2}{\underset{|}{C}} — CH_3;$$

that one of the other members of the series of compounds covered by claim 1, referred to in the examiner's decision as "2-nitro-2-pentene," has the formula

$$C_2H_5 — \overset{H}{\underset{|}{C}} = \overset{NO_2}{\underset{|}{C}} — CH_3;$$

and that as claim 1 recites that "R is a member of the group consisting of hydrogen and an *alkyl group having in excess of one carbon atom,*" one of the homologues

of the compounds covered by the claim is excluded therefrom. (Italics ours.) The homologous compound excluded from the claim is referred to by the Primary Examiner as "2-nitro-2-butene" and has the formula

$$CH_3 - \overset{\overset{\displaystyle H}{|}}{C} = \overset{\overset{\displaystyle NO_2}{|}}{C} - CH_3,$$

In rejecting claim 1, the Primary Examiner, in his original statement to the Board of Appeals, among other things, said:

"Claim 1 is rejected as reciting an improper artificial genus.

\* \* \* \* \* \*

That the exclusion of 2-nitro-2-butene is arbitrary appears on the face of the claim. The exclusion is necessary because this compound is old, being disclosed in the Angeli et al reference relied on (by the name "mononitrodimethylethylene", cf. the formulae). The artificial class represented by the definitions of R is thus in substance all of the members of a natural class except one old member. Claim 1 is further rejected as being unpatentable over Angeli et al."

Claim 1 was also rejected on the reference Beilstein's "Handbuch," Vol. I, the examiner stating that that reference disclosed "nitro-trimethyl-ethylene," having the formula

$$CH_3 - \overset{\overset{\displaystyle NO_2}{|}}{C} = C \overset{\diagup CH_3}{\diagdown CH_3}$$

which is an isomer of the compound 2-nitro-2-pentene, hereinbefore referred to and covered by claim 1.

Claim 2 was rejected on the Angeli et al. reference, the examiner stating that the claim was—"drawn to 2-nitro-propene, the *next lower homologue* to the compound disclosed by Angeli et al, is rejected on the same reference; no material, significant difference in properties or utility is shown to distinguish the claimed compound from the *next adjacent homologue disclosed in the reference.*" (Italics not quoted.)

Claim 3 was rejected as not reading on the elected species, no generic claim having been allowed.

Claims 1 and 2 were also rejected by the examiner on the Weiland reference. In rejecting those claims, the examiner also cited the reference Beilstein's "Handbuch", 4th.

Ed. 1918, Vol. V, page 483, as well as the references Henry, Kanao, and Schmidt. The Board of Appeals, however, in affirming the examiner's decision, relied solely upon the references Angeli et al. and Beilstein's "Handbuch," 4th. Ed. 1918, Vol. 1, page 213, reversed the examiner's rejection so far as the Weiland reference was concerned, and, as we understand the board's decision, also held that the references Beilstein's "Handbuch", 4th. Ed. 1918, Vol. V, Henry, Kanao, and Schmidt were not pertinent. Accordingly, the only references referred to by counsel for the parties which need be considered here are Angeli et al. and Beilstein's "Handbuch" Vol. 1.

It will be observed that as appellants deliberately excluded from claim 1 one of the homologues (2-nitro-2-butene) of the compounds claimed therein, and as that compound was old, being disclosed in the Angeli et al. reference, the Primary Examiner held that the claim was not a proper Markush form of claim, and was, therefore, unpatentable.

In concluding his original statement to the board, the Primary Examiner stated that appellants had not shown that the claimed compounds possessed any unobvious properties and utility, and that they relied "solely on the fact that the compounds in the artificial group, *as it is drawn,* are new. Even if the group were a proper one, it is submitted that novelty alone is not a necessary indication of patentability. *Invention* is a necessary requirement. Where closely related homologues and isomers are known, no invention is seen in preparing additional members of a known class of compounds, even though the additional members are specifically new. Appplicants have not shown that there is anything unobvious about so much as a single one of the claimed compounds." (Italics quoted.)

The Solicitor for the Patent Office states in his brief, in substance, that had claim 1 not been limited to an "alkyl group *having in excess of one carbon atom,*" it would have been a generic claim and would have covered a series of compounds, including the compound 2-nitro-2-butene, and as that compound was old, being disclosed in the Angeli et al. reference, the claim would have been unpatentable (italics not quoted); that as appellants have deliberately excluded that compound, the claim is proper only in the event it be held that the excluded compound "is so distinct in properties from

the other members of the class that it is inoperative for the purposes desired." In support of his contention, the solicitor cites the case of Ex parte Burke, 1934 C.D. 5, wherein it was stated, inter alia:

"If, on examination of a generic Markush type claim, it be found that the applicant has included one or more members known to be old in the art for the same purpose as in the applicant's invention, the group in its entirety must fail of recognition in exactly the same manner as would have been the case had the group of elements of the claim been identified by a single term. In such contingency, a formula of lesser scope may be invoked, provided that the remaining members of the group have a common quality which is distinctive from the characteristic of the major group and which itself imparts patentable merit to the subgroup over the generic group."

The solicitor further states in his brief that as appellants have failed to establish that the compound mononitrodimethylethylene, having the formula

$$\begin{array}{ccc} H & NO_2 \\ | & | \\ CH_3 - C & = C - CH_3, \end{array}$$

disclosed in the Angeli et al. reference, which is homologous to the compounds covered by claim 1, differs so in properties from the members of the claimed group that it is inoperative for the purposes desired, the claim is unpatentable.

Subsequent to the examiner's statement to the Board of Appeals, counsel for appellants filed two affidavits which are of record. One by one of the joint applicants (Henry B. Hass), and the other by Harry V. Wann, head of the Romance Language Department at Indiana State Teachers College, Terre Haute, Indiana.

The Wann affidavit includes a translation of the original article by Angeli et al., presumably the basis of the disclosure in the Angeli et al. reference of the compound mononitrodimethylethylene.

The affidavit of Hass pertains to the reference Beilstein's "Handbuch" Vol. I. It is stated in the affidavit that the reference cited was based upon a disclosure by one Haitinger in Monatschefte für Chemie, 2, 290 (1881); that the affiant obtained a copy of the original Haitinger article; and that the article failed in many important particulars to supply the necessary information which would enable him or anyone

skilled in organic chemistry to produce the compound nitro-trimethyl-ethylene, which is a 2-nitro-2-pentene, isomeric with the normal 2-nitro-2-pentene covered by claim 1. The affiant further states, however, that one H. W. Jacobson, a skilled organic chemist, had, under affiant's supervision, prepared the compound referred to in the reference by another method. He concluded, therefore, that Haitinger had not, in fact, produced the compound referred to in the reference.

Upon the filing of the aforesaid affidavits, the Board of Appeals remanded the cause to the examiner for reconsideration.

Thereafter, in his statement to the board, the Primary Examiner said, among other things, that the translation incorporated in the affidavit of Wann named, described, or identified the compound mononitrodimethylethylene, disclosed in the Angeli et al. reference; that the reference was cited for the purpose of showing that the compound was old; and that no process claims were involved in the case. The examiner reported somewhat fully regarding the Hass affidavit, his conclusion being that the statements contained therein were insufficient to negative the adequacy of the disclosure in Beilstein's "Handbuch" Vol. I, of the compound nitro-trimethyl-ethylene, the isomer of the compound (2-nitro-2-pentene) covered by claim 1.

The board, in its decision affirming the examiner's rejection of claims 1 and 2 on the Angeli et al. reference, and the further rejection of claim 1 on Beilstein's "Handbuch" Vol. I, held that the Angeli et al. reference disclosed the compound 2-nitro-2-butene, one of the homologues of the compounds covered by claims 1 and 2, and that the reference Beilstein's "Handbuch" Vol. I disclosed the compound nitro-trimethylethylene, the isomer of the compound (2-nitro-2-pentene) covered by claim 1. In so holding, the board, among other things, said:

"The examiner has rejected claim 1 as reciting an improper artificial genus because in the Markush group, although R may be hydrogen, it may not be an alkyl group having one carbon atom but it may be an alkyl group having two or more carbon atoms. In view of the radical difference between a hydrogen atom and alkyl groups, we believe, in any event, applicants should make the showing required by the examiner why R is so defined as to exclude at R an alkyl group of one carbon atom.

"On this record we assume that applicants anticipated the rejection made by the examiner on prior art and drew their broad claim accordingly. Applicants by this device cannot avoid the result imposed by Ex parte Burke, 1934 C.D., 5, which is the failure of the entire group. In any event, applicants have made no showing that the examiner is wrong in his rejection and their contention, that merely because a group in a compound is new the compound is patentable, is without definite support in law.

"That members of a homologous series should differ among themselves is obviously to be expected and such difference would not alone result in patentability for the compound."

It is contended here by counsel for appellants, among other things, that the formula for the compound mononitrodimethylethylene (2-nitro-2-butene), disclosed in the Angeli et al. reference, was written by the authors of the original article, to which reference was had in the Wann affidavit, "either in advance of making" the compound "or at least in advance of properly identifying it."

We are not in agreement with those views. The affidavit of Wann, which includes the translation hereinbefore referred to, shows on its face that the compound mononitrodimethylethylene (2-nitro-2-butene) was first made by the authors of the article and then identified by them both by name and by formula. Furthermore, although one of the applicants, Henry B. Hass, presented an affidavit in this case relative to the reference Beilstein's "Handbuch" Vol. I, one of the references relied upon by the board, there is nothing in his affidavit or elsewhere in the record to indicate that the compound disclosed in the Angeli et al. reference was not properly made and identified, or that the group of compounds covered by claim 1, which claim, as hereinbefore noted, also covers the 2-nitropropene compound of claim 2, possessed any property, quality, or utility which differed unexpectedly from the properties, qualities, and utility of the homologous compound mononitrodimethylethylene (2-nitro-2-butene), disclosed in the Angeli et al. reference. It is unnecessary therefore, that we discuss the disclosure contained in Beilstein's "Handbuch" Vol. I, or its application to the issues here presented.

It is further argued by counsel for appellants that appellants ought not to be required, in order to sustain the patentability of claims 1 and 2, to establish that the compounds covered by those claims possess some unexpected or unobvious property or utility not possessed by the homologous compound disclosed in the Angeli et al. reference, and that claims to *novel* chemical compounds should be held to be patentable, regardless of the prior art, because such compounds tend substantially to promote the progress of science and useful arts.

It is well understood by chemists that the members of a homologous series of chemical compounds possess the same principal characteristics; that generally the chemical and physical properties of the individual members vary gradually from member to member; and that knowledge of the properties and chemical behavior of one of the members of the series suggests to the chemist the properties and chemical behavior of the other members of the series. See Holleman & Walker, Textbook of Organic Chemistry, 5th Ed., 1920, pp. 41, 42, and Paul Karrer, Organic Chemistry, 1938, p. 23. That appellants were aware of those facts is evidenced by the disclosure in their involved application. They describe only two members of the claimed series, but claim all of the members of the series except the one disclosed in the Angeli et al. reference. Apparently, appellants were of opinion that as they had produced and described two members of the homologous series covered by claim 1, it would not involve invention to produce the other members of the series covered by that claim.

We are of opinion that the tribunals of the Patent Office were right in holding that, in order to be patentable, novel members of a homologous series of chemical compounds must possess some unobvious or unexpected beneficial properties not possessed by a homologous compound disclosed in the prior art.

It is elementary that novelty alone is not sufficient to impart patentability to a claim. Invention must be present. See Thompson v. Boisselier, 114 U.S. 1; In re Lincoln et al., 29 C.C.P.A.(Patents) 942, 126 F.2d 477, 53 USPQ 40, 43; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 51 USPQ 272.

With reference to claim 1 being, as it is argued, a proper Markush type of claim,

counsel for appellants states in his brief that—

"Previous to the present decision of the Board, Markush type claims had been held 'improper' only when they *included* members not generally recognized as possessing a common general quality or characteristic. Now the Board hopes to extend this doctrine to the case where an excluded member, whether old or new, likewise makes the claims 'improper'." (Italics quoted.)

As hereinbefore stated, the tribunals of the Patent Office concurred in holding that as one of the homologues of the group claimed in claim 1 was *old* in the art and was expressly excluded from the claim, and as it was not shown that the group claimed possessed any material or significant properties or utility different from that possessed by the excluded homologue, claim 1 was not a proper Markush type of claim. That holding is in conformity with the holding of the Commissioner of Patents in Ex parte Burke, supra, which holding we approve.

Counsel for appellants argues, however, that the decision of the board in the instant case is contrary to the decisions of the Patent Office tribunals in the cases of Ex parte Dean, 38 USPQ 499, Ex parte Shelton, 49 USPQ 36, and Ex parte Frey et al., 53 USPQ 391.

In the case of Ex parte Dean, supra, it was held that an applicant might omit one member of a chemical group in a Markush type of claim, provided that member might properly have been included therein and was not disclosed in the prior art. It appears that in that case the original claims included beryllium, and the claims were rejected on prior art. The reference was overcome, however, by the applicant by an affidavit under rule 75 of the Rules of Practice in the United States Patent Office. The applicant, nevertheless, omitted beryllium from the claims on appeal. The Examiners in Chief held that under the related circumstances the applicant had a right to voluntarily omit beryllium from the claims, and that the decision in Ex parte Burke, supra, was not intended to apply to the related facts.

In the case of Ex parte Shelton, supra, neither of the claims quoted is a Markush type of claim. It appears from the decision in that case that the composition claimed was a derivative of ephedrine; that appellant's claimed composition was of the "levo" type; that it was an improvement over ephedrine for the treatment of certain diseases; that the application as originally filed also disclosed a product of the "racemic" type, which was also claimed to be an improvement over ephedrine and was the equivalent of the "levo" type. The opinion recites that it was discovered that the racemic compound was old in the art, and that appellant admitted that he was not entitled to repatent the old composition, but claimed that he was entitled to a patent for the new product and a method of making the same, which method and product *could not be predicted from the known characteristics of the prior art material.* The Examiners in Chief allowed claims to the new material and to the method of making the same. The case, obviously, has no application to the issues here presented.

It appears from the decision in the case of Ex parte Frey et al., supra, that one of the joint applicants (Frey) was a joint applicant for a patent previously granted to a common assignee. The claims involved in the Frey case, supra, were of the Markush type and excluded, among other things, silver nitrate. The applicants were precluded from including silver nitrate in the claims there involved because of the patent previously issued which covered that substance. In their decision allowing the claims, the Examiners in Chief stated, among other things, that the involved application and the patent issued to the common assignee disclosed a comprehensive investigation of the particular subject matter there involved, and that "Having obtained partial protection in the already-granted patent, we see no reason why the remaining discoveries involved in the investigation would not be protected in a second patent, granted on a copending application, if a clear line of division is maintained."

Whatever might be said as to the correctness of the decision in the Frey case, supra, the distinction between that case and the case at bar is that in that case the question involved was considered by the board to be one of double patenting, whereas that issue is not here involved.

For a further discussion of the Markush type of claim, see In re Swenson et al., 30 C.C.P.A.(Patents) 764, 132 F.2d 336.

We are of opinion that the tribunals of the Patent Office were right in rejecting the appealed claims. Accordingly, the decision of the Board of Appeals is affirmed.

Affirmed.