37 C.C.P.A.(Patents)

## Application of NORRIS.

### Patent Appeal No. 5633.

United States Court of Customs and Patent Appeals.

Feb. 2, 1950.

Pennie, Edmonds, Morton & Barrows, New York City (Louis D. Forward, New York City, and Clarence M. Fisher, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL and JOHNSON, Judges.

2. The respondent points out that under the regulation as applied, the "hardship" which complainant incurred could be a substantial one only at the inception of the flour subsidy program, when net forward sales as of November 30, 1943, were to be completely offset by subsequent grind, prior to commencement of any subsidy payment. As stated in respondent's brief: "Once the program got under way, however, and the miller had worked off his pre-subsidy bookings, there was

JACKSON, Judge.

In this appeal we are called upon to review a decision of the Board of Appeals of the United States Patent Office, affirming that of the Primary Examiner, finally rejecting the single claim of appellant's application for a patent, serial No. 608,357, filed August 1, 1945, alleging new and useful improvements in a chemical product.

The claim was rejected by the Primary Examiner as unpatentable over the following cited prior art:

Signaigo     2,307,643     January 5, 1943;
Meyer, Beilstein
   (Handbuch (der Org. Chem.) Vol. 3, pages 681, 688 (1921);
Wache Beilstein
   (Handbuch der Org. Chem.) Vol. 3, page 706 (1921);
Henry or Wallach, Beilstein
   (Handbuch der Org. Chem.), Vol. 3, page 696 (1921).
Hanriot et al., Bull. Soc. Chim de France (3) Vol. 1, pages 172–175.
Adkins et al., J. Am. Chem. Soc., Vol. 64, pages 150–154 (1942).

The Board of Appeals refused to sustain the examiner's rejection on the Meyer and Adkins et al. publications, and further stated that the Henry or Wallach reference does not fairly suggest a modification of the Meyer and Adkins references to warrant an anticipation of the rejected claim, which reads as follows:

Alpha, alpha-dimethyl-beta-imino-gamma-methyl-valero-nitrile.

The claim describes a new chemical combination defined in accordance with the Geneva system of standard nomenclature. It is stated in the application that the compound is valuable an intermediate for the production of keto nitriles and esters by hydrolysis, amino acids, diamines and other products. It is said to form white crystals, melting at 85–86° C. and boiling at 140–145° C./6 mm.

The board in its decision referred to the Wache publication only, but did not reverse the decision of the examiner with respect to the Signaigo patent and the Hanriot et al. publication. Therefore, those three references are properly before the court.

None of the references discloses the compound defined in the appeal claim, the structural formula of which appears to be as follows:

The board seemingly accepted the statement of counsel for appellant that "The single claim here on appeal defines a chemical compound that is new and has beneficial utility." Therefore, we do not deem it necessary to describe in detail the disclosures in the references.

Both the examiner and the board held that the Wache publication discloses an isomer of the compound defined by the claim, and that holding has not been challenged by counsel for appellant. It is stated in their brief that the compound identified by the formula in the Wache reference " * * * is one of many of the theoretically possible isomers of the compound defined by the rejected claim." Therefore, it appears that the tribunals of

---

no possibility whereby the procedure adopted could work to the disadvantage of anyone, including combined millers. Thus, where in a particular month, a miller ground out soft wheat, and was paid at the soft wheat rates, and pursuant to the first-in-first-out rules, such grind was applied to offset forward sales of hard wheat, carrying a higher rate, said miller in the following month, would grind out hard wheat for which he would be paid hard wheat rates, and under the mentioned first-in-first-out rule, said hard wheat grind would have been used to offset his soft wheat forward sales. In other words, the subsidy account ultimately would balance out and the miller eventually would come out whole. To reiterate, once the initial transactions relating to the pre-subsidy forward sales had been disposed of, the procedure adopted herein allowed for complete balance of the accounts of the combined miller."

the Patent Office and appellant fairly agree as to the disclosure in that reference.

The examiner held the claim to be unpatentable over the Wache reference in view of either the Signaigo patent or Hanriot et al. publication for the stated reason that the general class of compounds made by the same general process are disclosed in those references, and that an isomer of the claimed compound is old, as shown in the Wache publication.

The Board of Appeals held that the claim was properly rejected on the Wache reference, because an isomer of the claimed compound is there disclosed, and that no utility above and beyond that to be expected of such isomer was shown, citing In re Jones, 162 F.2d 638, 34 C.C.P.A., Patents, 1168.

Counsel for appellant in their brief concede that their contention as to the patentability of the claim is in apparent conflict with the holdings in the cases of In re Hass et al. (Patent Appeal Nos. 4819, 4820 and 4821) which are reported in 31 C.C.P.A., Patents, 895, 903 and 908; in 141 F.2d 122, 127 and 130, respectively. That contention also applies to our opinion in the case of In re Jones, supra. Counsel for appellant state that they know of no decision of the Supreme Court which holds expressly or by implication that a single new and beneficially useful chemical compound is not patentable to the first inventor or discoverer thereof.

It may be observed that the argument of counsel is confined to chemical compounds and not to the position of the Supreme Court with respect to the requirements for invention involving processes, products of manufacture and compositions of matter.

■ Answering appellant's argument, it is pointed out in the brief of the solicitor that the law, as interpreted by the Supreme Court, is that in order to be patentable a product must, in addition to being new and useful, also satisfy the requirements of invention or discovery. Funk Bros. Seed Co. v. Kalo Inoculant Co., 333 U.S. 127, 68 S.Ct. 440, 92 L.Ed. 588.

■ We agree with the solicitor that a chemical compound obviously is a product and of course such product must belong in one of the statutory classes of invention set out in R.S. § 4886, 35 U.S.C.A. § 31, and there can be no doubt that the rule is well established to each one of those classes that a mere showing of novelty and utility is insufficient upon which to base patentability.

In the first of the Hass et al. cases, supra, we held that "novel members of a homologous series of chemical compounds must possess some unobvious or unexpected beneficial properties not possessed by a homologous compound disclosed in the prior art." [141 F.2d 125.] We stated that novelty alone, without invention, is not sufficient to lend patentability to a claim, citing Thompson v. Boisselier, 114 U.S. 1, 5 S.Ct. 1042, 29 L.Ed. 76; In re Lincoln, 126 F.2d 477, 29 C.C.P.A., Patents, 942; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. The reasoning in that Hass case was based upon the fact that chemists understand that members of a homologous series of chemical compounds possess the same principal characteristics which vary gradually from member to member, and that knowing the chemical and physical properties of one of the members suggests the properties of the other members.

Appellant argues that, since in the Hass cases, supra, only adjacent homologues were involved, the statements concerning isomers contained therein are obiter dicta. With respect to our opinion in the Jones case, supra, it is appellant's position that the ultimate decision does not appear to have turned upon the existence of any general relationship between the chemical and physical properties of isomers, and that statements with relation thereto are likewise obiter dicta.

In the cases of Application of Finley (Patent Appeal Nos. 5570 and 5571) which are reported at 36 C.C.P.A., Patents, 998 and 1005, 174 F.2d 130, 134 and 135, respectively, we took occasion to review somewhat extensively the Hass et al. cases, supra. We there stated that: "It may be

said that in all three of the Hass et al. cases, supra, it was found, in effect, that the prior art disclosed subject matter homologous with the subject matter of the claims and, in some instances, disclosed subject matter isomeric with that of certain of the claims. Under the facts of those cases no distinction was there drawn by us between the homologues and the isomers upon the question of patentability, both types of compositions being produced in substantially the same manner."

It may be observed that the rule relied upon by the tribunals of the Patent Office was specifically applied to isomers in that case. There we affirmed the rejection of an admittedly new and useful compound, 2-ethyl hexyl salicylate. Normal octyl salicylate was disclosed in the prior art and it was conceded by counsel for appellant that such disclosure was an isomer of the claimed compound. There, as here, counsel for appellant sought to distinguish the case from the Hass et al. cases, supra, and with respect to counsel's contention we stated as follows: "Obviously appellant construes our holding in those cases to mean that if a new and useful product does show unobvious or unexpected beneficial properties it follows that such a product is patentable. We did not affirmatively, or even by implication, so state in our decisions there. Our statement meant merely that unless a product does show the defined characteristics it is not patentable. Even if they be shown, the consideration of other factors may be required. As we said in our decision in the second Hass et al. case, supra, 'Whether novel chemical compounds are patentable over prior art isomers and homologues, is a question to be determined in each case.' "

The facts in the Finley case, supra, were practically identical with those that are before us here, and there is no occasion to disturb our reasoning in that case.

■ Counsel for appellant in their brief acknowledge that the record herein does not establish that the admittedly new and useful compound defined by the rejected claim possesses one or more specifically identified properties to be recognized as unobvious or unexpected, as measured by every conceivable standard. Since the product claimed herein admittedly possesses no unexpected characteristics or properties, in view of what has hereinbefore been said, it is not patentable.

■ In the brief of the solicitor, we have been requested judicially to notice quotations from two of the chemical textbook authorities, A Textbook of Organic Chemistry by Chamberlain, published in 1921 by P. Blakiston's Son & Co., and Principles of Organic Chemistry by Norris, Second Edition, published in 1922 by McGraw Hill Book Company, Inc. We take such judicial notice and find in the first textbook, as well as in the third edition of it, as revised in 1934, at page 29 the following: "It has been found that in each group of isomeric hydrocarbons the *normal* compound is the one having the highest boiling point. The normal hydrocarbons themselves form a gradually ascending series as indicated by their boiling points, while each group of isomeric hydrocarbons forms a gradually descending series. These two facts of an *ascending series of normal compounds* and a *descending series of each group of isomeric compounds* have been found to be true, not only for the hydrocarbons, but for each series of substitution products of these hydrocarbons. This emphasizes in a striking way the family or series relationship. The homologous nature of each such series of organic compounds is thus seen to be something fundamental which finds its most probable explanation in our conception of structure or constitution as we have discussed it." (Italics quoted.)

The Norris textbook contains the following: "There are many organic compounds which have the same percentage composition; for example 107 compounds having the formula $C_9H_{11}O_2N$ have been described. Such compounds are called isomers (signifying equal measure) and the phenomenon is known as *isomerism*. When two isomers resemble each other closely in chemical properties they are said to be *metameric*." (Italics quoted.)

In view of what has been quoted from the textbook authorities, we think it is con-

974

clusively established that structural isomers have defined predictable physical properties, and that the chemical similarity in such a large group justifies the coining of the term "metameric" to characterize such isomeric compounds. The statement made in the Jones case, supra, that isomers possess similar chemical and physical properties is thus shown to have ample basis in the authorities, and that case, as well as the Finley case, supra, are proper precedents to support the rejection of a novel compound which is isomeric with compounds of the prior art, where the new compound is not shown to possess new and unexpected utilities.

For the reasons hereinbefore set out, the decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.