Rich, Judge,
delivered the opinion of the court:
This is an appeal from a decision of the Board of Appeals affirming-the examiner’s rejection of claims 1 through 10 of appellants’ patent application, filed July 22, 1950, for “Precision Positioning Means,” disclosed as embodied in a jig boring machine. The record discloses that the alleged invention has for several years been standard equipment in the Pratt & Whitney No. 4E jig borer.
Appellants conceded at the argument that if claim 1 is not patentable, none are; that all the claims stand or fall together. Claim 1 is illustrative and is here set forth:
A positioning device fox- a machine tool work table comprising a base, a table movable thereon, an elongated har of magnetic material secured to said table and extending in the direction of movement thereof, a linear series of equally spaced integral projections formed along one side of said bar, an electric head movably mounted within said base closely adjacent said projections, and precision means to move said electric head predetermined limited distances in a direction parallel to said bar. (Emphasis ours.)
The references relied upon are:
Rusnak et al., 2,440,916, May 4, 1948
Godsey, Jr., 2,461,685, Feb. 15, 1949
The claimed invention is for precision positioning means for the work table of a machine tool including a base upon which the table is movable. Secured to the table is a bar of magnetic material, having equally spaced integral projections formed along one side, the bar extending in the direction of movement of the table. An electromagnetic head, having two electromagnets, is movably mounted within the base closely adjacent the plane in which the projections move. There is also provided micrometer mechanism to move said head predetermined limited distances in a direction parallel to the bar. Means are provided to traverse the table to bring the appropriate projection on the bar directly between the pole pieces of the precision adjusted head. When- a projection is directly between the pole pieces of the electromagnets, voltages induced in the magnet coils will be equal so that an indicating instrument in a bridge circuit including the mag *769 net coils will show a zero reading indicative of precise adjustment of the work table. The equally spaced bar projections may, for example, be one inch apart and the movement of the electromagnetic head used to make fractional inch adjustments. Two such bars and heads may be used, one set applied to the table and its supporting saddle and the other between the saddle and the machine bed, the bars extending at -right angles so that the table may be accurately positioned under the boring head.
Although the claims are drawn to combinations, it is conceded that the only novelty residing therein is the specific form of the bar, an improvement in one element of the combination. Stated otherwise, the Rusnak et al. reference admittedly discloses the claimed positioning mechanism except that the bar there described was of non-magnetic material with inserts of an alloy having high magnetic permeability mechanically clamped therein and equally spaced at the time of clamping. It is also noted that the inserts projected beyond the surface of the bar. The inserts functioned precisely as do the integral projections of the bar of the instant application. The present coin-ventor John M. Rusnak is the same Rusnak who was a joint inventor in the reference patent. He claims to have improved upon the prior invention in which he participated.
The sole issue before us is whether the change from a non-magnetic bar with magnetic inserts to a one-piece bar of magnetic material with integral projections was a patentable advance. Novelty, in the sense of a difference pointed out in the claims, is not in dispute. That the integral bar of magnetic material is better, an improvement, was conceded at the argument by the Solicitor for the Patent Office. Utility may therefore be presumed. There remains, however, the question of compliance with the requirement of 35 U. S. C. 103, un-obviousness at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. If this element is lacking, the decision below must be affirmed.
We think the use of the bar of magnetic material with integral projections, as claimed, was an obvious step forward and so hold.
Appellants’ argument that the step taken was unobvious, as we see it, is based principally upon two contentions: (1) that the use of a magnetic instead of a non-magnetic bar was “contrary to accepted theory” because those skilled in the art had a “firm conviction” the bar should be of non-magnetic material so that the magnetic inserts would function as intended; and (2) that the satisfactory functioning of the projections on a magnetic bar was “wholly unexpected.”
Taking up the first contention, the record sheds no light on what the accepted theory- was or who had the firm conviction that the bar must be non-magnetic. Appellants’ brief says, arguendo, that *770 “It was originally held that the magnetic flux between the pole pieces of the electric head would be required to be concentrated within the magnetic inserts without spreading over the principal portions of the bar.” And again, “It was the belief then that only the projections [i. e. the inserts] could be made of magnetic material.” Apparently these were beliefs at one time held by one or the other or both of the joint inventors Busnak and Durkee of the principal reference, if they were in fact held by anyone, beliefs later abandoned and proved false by the appellants Jaeger and Busnak. There is nothing to show that anyone else thought that the magnetic flux would have spread over the principal portions of the bar, if it had been of magnetic metal, or that there was any generally “accepted theory” that it would do so. If we are to give any weight to such an argument we must be referred to some evidence tending to substantiate the premise on which it is based. A mistaken idea held by one or two workers in an art cannot be regarded as an accepted theory. That it was a mistaken idea has been established by appellants who found the opposite to be the case.
Coming to the second point, the classic “surprise” which is supposed to indicate unobviousness, some further consideration of how the positioning mechanism works will explain why we find nothing to surprise the man skilled in the art in the fact that it does work with a magnetic bar. The Busnak et al. reference explains quite clearly that the indicating meter reads zero when a magnetic insert on the bar is exactly centered between the pole pieces of the two electromagnets because the voltages in the magnet coils will then be balanced and that the magnetic circuits of these coils, which affect these voltages, will be thrown out of balance by any deviation from this centered position. This is so because such deviation increases the air gap in the magnetic flux path of one magnet core and decreases it in the flux path of the other. Since these gaps occur between the ends of the magnet pole pieces and the corners of the- inserts, which protrude from the surface of the bar in the reference, the material of the bar itself- would not seem to make much difference. The theory involved, rather than pointing up the unobviousness of using an integral bar would seem to suggest it. In any event, when it was tried it worked.
Appellants’ brief mentions that when a magnetic bar was used and the projections were made by milling wide slots of substantial depth, the magnetic flux “was found to be concentrated within the outer ends of the projections rather than spreading through the remainder of the bar.” Since this invention depends upon the application of principles of electromagnetism, we feel that the fictitious “person having ordinary skill in the art” must in this case be presumed to have at least an elementary knowledge of those principles. We think the possibility of using a solid magnetic bar with projections would have occurred *771 to him spontaneously and that he would have known before trying it out that it would work.
What we see in the Godsey reference is not so much a disclosure of any specific element of the claimed invention as numerous applications of the basic principles of electromagnetism which are involved in the intention at bar, particularly the varying of magnetic flux paths by the varying of air gaps and their utilization in controlling currents which actuate meters to indicate the relative positions of mechanical members for measurement purposes. This reference clearly shows the knowledge to be presumed of workers having ordinary skill in this art. It is also true, as the examiner pointed out, that Godsey discloses bars of magnetic material with projections, both magnetized and unmagne-tized. The projections cooperate, furthermore, with other members to indicate movement by the variation of air gap spacing and changes in flux paths as in appellants’ device. Appellants’ statement that God-sey’s projections “required no precision whatever” is not true. He suggests air gaps of the order of .005 inch and utilizes variations therein of fractions of thousandths of an inch for indicating purposes.
Appellants’ remaining argument is “commerciability” which, under the well established rule, is of no moment unless patentability is in doubt. Since there is no doubt in our minds on the question of patentability, we need not discuss this point beyond observing that we see no parallel here to the situation which existed in Goodyear v. Ray-O-Vac, 321 U. S. 275, cited by appellants (and rather badly misquoted).
Appellants suggest that we should look more generously on this case because the closest art is a previous development of the same inventor. No authority is cited to support this proposition and we know of none. The law makes no distinction between prior art of an applicant’s own making and the prior art of others. It is urged that an inventor should be allowed to profit from improvements he makes on his own “basic” invention. While it has had no effect on our decision, it is noted that claims 1 and 7 of the Kusnak et al. reference are not limited to bars of non-magnetic material and would appear to dominate the present improvement. To support a separate patent, an improvement must meet all of the statutory requirements of patent-ability which this one fails to do.
For the foregoing reasons we see no error in the decision of the board and it is affirmed.
Jackson, J., retired, recalled to participate herein in place of Cole, J., absent because of illness.
O’Connell, J., was present at the argument of this case, but, because of illness, did not participate in the decision.