### In re PIRANI et al. *

#### Patent Appeal No. 3410.

Court of Customs and Patent Appeals.
Feb. 25, 1935.

*Appellant's petition for rehearing denied March 25, 1935.

224

Lee B. Kemon, of Washington, D. C. (Thomas H. Brown, of Hoboken, N. J., and Alfred L. Taylor, of Washington, D. C., of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting claims 1, 2, 3, 6, 7, and 8 of appellants' application. The rejection of said claims was upon the ground that they were not patentable over the cited prior art. Claims 4 and 5 of said application were allowed.

Claims 1, 3, and 6 are illustrative of the claims on appeal, and read as follows:

"1. In a positive column electric discharge lamp, a container, a filling of gas therein, electrodes therefor, and a rod of gas evolving material in operative relation to the discharge device adapated when intermittently heated to liberate replenishments of the same gas to said device."

"3. In an electric discharge device, a container, a filling of gas therein, electrodes therefor, a current supply circuit for said electrodes, a rod of gas evolving material in operative relation to said discharge device, a heater for said rod, and means intermittently operated by variations of current flow through said discharge device for cutting said heater into and out of connection with said current supply to said electrodes."

"6. As a new article of manufacture, a gas evolving body comprising a sintered rod of a gas evolving chemical compound and a binding material having a lower sintering point than said gas evolving material."

The references relied upon are:

Moore, 1,010,670, December 5, 1911.

Lindemann (British), 27,599, July 9, 1914.

Lanstrom, 117,084, July 18, 1871.

The Moore and Lindemann patents are included in the record on appeal, but appellants failed to include a copy of the Lanstrom patent in the record.

Appellants' disclosure relates to an arrangement for renewing the gaseous filling of an electric discharge tube as the gas is used up under the action of discharge. While it is argued by appellants' counsel that their primary purpose concerned such types of discharge devices as are generally known as "glow-lamps," in which an electric discharge through a tube containing a certain gas causes said tube to glow, their specification and some of the claims on appeal do not so limit their application. The object of the alleged invention is the replenishing of the gas filling of electric discharge devices as is required by the dissipation of the gas within the device as a result of the continued electric discharge therethrough. As disclosed by appellants, the tube forming the container of the electric discharge device has a small branch tube, in which is positioned a sintered rod composed of magnesium carbonate or equivalent gas-producing materials and a binder. A heating coil surrounds this rod, which coil is connected to the current supply by means of a magnetically controlled switch. When the decrease in gas pressure within the discharge device produces a resultant reduction in the resistance of the tube, with a corresponding increase in the flow of current through the device, said magnetic switch operates to connect in circuit the heating coil around the gas-evolving rod, releasing gas therefrom to replenish the gas supply in the device. When the gaseous condition in the device is thus brought to the desired point, the current decreases and the magnetic switch again operates to short circuit the heating coil and prevent the further release of gas from the gas-evolving rod.

The patent to Moore discloses a device having a large tube, within which are electrodes and a gas; inserted in the wall of this tube is a wall of material the porosity of which increases on an increase of temperature. This material forms a division between the main tube and a source of gas supply. When the temperature in the tube

rises because, as the patentee states, of a depletion of the gas therewithin, the porosity of the material separating said tube from the gas supply is increased, allowing the entrance of gas into said tube. In one form of the invention shown in the drawings, there is shown a heating coil around said material, said heating coil being connected in circuit with the device; still another drawing shows an arrangement whereby said coil is electromagnetically energized or cut out of circuit, as the operating condition of the device requires.

The patent to Lindemann discloses a method of maintaining a constant pressure, by the introduction of gas, within "Röntgen tubes, vacuum tubes, and the like." This is accomplished by inserting within such tube, or in a "side-tube" connected therewith, a "reversibly dissociable substance," such as chalk, which is capable of giving off gas, the generation of gas from such substance responding to increased temperature, so that by increasing the temperature of said material a greater delivery of gas is obtained. Conversely, by reducing the temperature of the material the generation of gas is interrupted and gas already generated returns and is absorbed by said material, so that after use the tube and material are in substantially the same condition as before use, discounting the occlusion of gas in the electrodes or envelope, which is said by the patentee to be negligible.

As hereinbefore indicated, the patent to Lanstrom was not included by appellants in the record on appeal. Said patent was cited by the examiner, with comment as follows: "The patent to Lanstrom shows that chalk rods usually contain materials of low sintering or fusing points."

The statement of the examiner, after detailing appellants' alleged invention and the inventions disclosed by the reference patents to Moore and to Lindemann, stated: "The rejected claims read on Moore in which the chalk block of the British patent has been substituted for the reservoir and membrane. It is not deemed to be invention to make this substitution."

In the decision of the Board of Appeals we find the following:

"The patent to Moore discloses a tube of the gas discharge type with a heating circuit for replenishing the gas in the tube when it is diminished beyond a desired minimum. The method of replenishing gas in this apparatus of the Moore patent is by causing the heat to expand the porosity of the valve member 4 and allow a limited amount of replenishing gas to be passed through the pores of this valve from a gas tank or gas generator or any source of gas through the pipe 5 to replenish the contents of the tube.

"The British patent No. 27,599 of 1913 [the Lindemann reference] discloses a similar branch tube for replenishing the gas in the gaseous discharge tube from a chalk rod A by a heating coil B in much the same manner as is done in the case of the application. To merely substitute this method of using a chalk rod in the British patent for the heated valve to furnish supply in the Moore patent is not considered to amount to a patentable improvement.

"We are in agreement with the position of the examiner to the extent indicated and the rejection is affirmed."

It is the contention of appellants that: (1) The Lindemann patent concerns only X-ray tubes and the like, operated at a very low gas pressure, or substantially vacuum pressure, and therefore relates to an art not analogous to that involved in appellants' application, viz., light or lamp tubes filled with gas at substantial pressure, and for that reason the British patent is not a proper reference; (2) that even if it should be held that the Lindemann patent does not relate to a nonanalogous art, the modification of the Moore device necessary to incorporate the gas-evolving substance as shown by Lindemann was not obvious to one skilled in the art.

The Solicitor for the Patent Office calls attention to the fact that the patent to Lindemann is not limited to X-ray tubes and the like, but extends to vacuum tubes, without limitation, containing gas, and that appellants' application and some of the claims are not limited to lamp or light tubes, but relate to "electric discharge devices" without limitation. In appellants' specification, lamp or light tubes are not referred to except in the description of the drawings, and in comments with respect thereto. The general description of the invention refers only to electric discharge devices with a filling of common gases. The specification begins with the following statement: "The present invention relates to gaseous electric discharge devices."

The specification of the Lindemann patent begins with the following statement: "This invention is for improvements in

method and apparatus for the regulation of gas pressure in Röntgen tubes, vacuum tubes, and the like."

Some of the claims of appellants' application, such as claim 3 hereinbefore quoted, are, we think, broad enough to include X-ray tubes, although appellants' counsel contend that the phrase "a filling of gas therein" would prevent the application of the claim to such tubes. However, we understand from the Lindemann disclosure that X-ray tubes must have a filling of gas in order to be operative, but that the pressure of gas in such tubes is very low, while in lamp or light tubes the pressure of gas must be very substantial.

Moreover, some of the claims in the Lindemann patent seem to cover the essential elements of appellants' alleged invention embraced in claims 1, 2, 3, 7, and 8. Claim 3 of said patent reads as follows: "3. A device for regulating the pressure of gas in vacuum tubes, Röntgen tubes, or the like, comprising a vessel of glass or other suitable material in which is placed a piece of chalk round which is wound a heating coil, the ends of which coil are connected to platinum leading-in wires fused through the walls of the vessel, the said vessel being fused to the Röntgen or other tube in such manner as to maintain the interior of the tube in free connection with the vessel containing the chalk."

In view of the foregoing, we do not think that it may properly be held that the patent to Lindemann relates to a nonanalogous art, and we find no error in its citation as a reference.

The question remains whether it would involve invention to modify the Moore device by substituting, for his source of gas supply and the heated valve shown by him, the chalk rod shown by Lindemann. If this substitution were made, appellants' claims 1, 2, 3, 7, and 8 would fairly read upon the resulting structure. Both of the Patent Office tribunals concurred in holding that this modification of Moore would not involve invention, and we are unable to say that they were manifestly wrong in so holding. Therefore, in accordance with the well-established rule, the decision of the board rejecting said claims should be affirmed.

Claim 6 is of a different nature. It claims invention, as a new article of manufacture, of a gas-evolving material and a binding material having a lower sintering point than said gas-evolving material. As heretofore stated, Lindemann disclosed a gas-evolving body consisting of a piece of chalk. Appellants have not seen fit to include in this record the patent to Lanstrom, cited as a reference. With respect to this patent the examiner stated that it shows that chalk rods usually contain materials of low sintering or fusing points. In view of the fact that appellants have not controverted this statement, and have not included the Lanstrom patent in the record, we must assume that the statement by the examiner of its disclosure is correct. This being true, clearly claim 6 was properly rejected by the Patent Office tribunals.

For the reasons stated herein, the decision of the Board of Appeals is affirmed.

Affirmed.