## APEL v. CONNOLLY.

### Civ. A. No. 136–50.

United States District Court
D. New Jersey.
Jan. 22, 1951.

Edward I. Baker, Atlantic City, N. J., for plaintiff.

Nathan Goldberg, Atlantic City, N. J., for defendant.

MADDEN, District Judge.

This matter was tried by the court without a jury and is a suit by plaintiff, Arno A. Apel, against defendant, Frank R. Connolly, for an injunction, together with accounting and damages for infringement of a patent owned by plaintiff. Defendant admits infringement and the damages have been stipulated, but validity of plaintiff's patent is contested upon the grounds of anticipation in two prior patents.

The plaintiff's patent No. 2,126,304 issued August 9, 1938, relates to new and useful improvements in design of a boat. The plaintiff's design for this boat, to be used for racing at high speed, embodies several ideas for the one main purpose, increased speed. The design of the hull is a doubly concave bottom at its forward or bow part changing constantly in contour as it (the bottom) moves backward or aft and being flat at the stern. The hull has stabilizers or, in the language of the unskilled, pontoons at the bow end which constituted a radical change in boat design. These stabilizers are hollow, so as to add little to the overall weight of the boat; they are constructed outside the regular lines of the hull so as to help buoyancy, and they are constructed on the same level with the hull at the front or bow where they begin and gradually change to a greater depth or level than the rest of the bottom till they end at midships. Inasmuch as the nose or bow of speed boats usually rides out of water the stabilizers have the effect of trapping air under the forward end, and being at a lower level than the rest of the hull tend to keep the air there and move it back amidships. To the inside of these stabilizers, where they end, are attached fins of metal which run longitudinally towards the stern. These fins keep the air trapped under the bottom of the boat and move it backwards until it passes out at the stern. The inventor's idea or purpose concerning the entrapment of air under the bottom was twofold. First, such air would create lift and therefore aid the buoyancy of the boat; and second, as the air moved back underneath the hull it would have the effect of depressing or stilling the water for it was well established in boat racing circles that boats move faster over water that is not disturbed than they do over agitated water.

This generally and somewhat unskillfully describes the boat; however, two other features were added. First was added what is known as the non-trip or non-tilt chines. The best way to describe this to this court's meagre ability is that instead of the bottom of the boat joining the sides at a right angle or close thereto, another surface of the hull was created by constructing outward and upward at an angle and then joining the verticle part of the side. This angular surface is present throughout the greater length of the boat, including the stabilizers, in varying sizes and degrees and on both sides thereof. This non-trip chine does not impede the progress of the boat either through or over the water but on turning and the boat tending to tilt, it provides a flat bottom on the side towards which the turn is being made and a vertical side against the water on the opposite side. This helps to prevent skidding on turning in the water and is a safety feature.

The second feature was that by the particular manner in which the stabilizers or pontoons were constructed with the air compressed under the bottom of the boat, it provided the boat with three planing surfaces, the two stabilizers fore and the stern portion of the boat aft. By reducing the amount of boat surface in contact with the water at high speed one gets less resistance or adhesion and thereby increases the speed.

The defendant contends that this invention was anticipated and the ideas disclosed in two prior patents, patent No. 1,620,349 granted to William Albert Hickman, March 8, 1928, hereinafter referred to as the Hickman patent or boat, and patent No. 1,831,-339 granted Alanson P. Brush, November 10, 1931, hereinafter referred to as the Brush patent or boat.

Defendant contends that the three planing surfaces idea was disclosed in the Brush patent and the non-tilt or non-trip chines were disclosed in the Hickman patent.

It is the feeling of the court that the only way this can be answered is by a minute examination of the respective patents, claims and drawings for comparison purposes and consideration of the evidence adduced before the court. Such examination on our part leads to the conclusion that the Apel patent was not anticipated or disclosed in the Brush and Hickman patents and is therefor valid. What is said hereafter is by way of explication for our holding.

At the outset, it is the opinion of the court that while each boat may have incorporated in it several different features, nevertheless, each boat must be studied as a separate entity as they were all seeking the same thing, i.e., high speed in a small boat.

Taking the Hickman patent first and in particular in relation to the non-tilt or non-trip chines, this surface on the Hickman boat was constructed in what might be called steps, the forward part of each being at a higher level than the rear of the preceding one. There are a total of 23 such steps on each side (according to the drawings) and the chine is described by Hickman as follows: "* * * Thus when the boat is at speed the most forward portion engaging the water will be of greater width than the parts aft and the water streaming aft from this portion will define a trough adjacent either side of the boat and the angled surfaces 40 and 40' will be disposed in this trough and not in contact with the water when the boat is running straight ahead. To prevent the water from adhering to these surfaces after the boat has made a turn and been straightened out on her course again or when by any accident water has come in contact with these surfaces I preferably provide a series of small water breaks 50 (see Figs. 2 and 5) which will break the adhesion of the water to these surfaces of the boat permitting air to enter behind the sheet of water. Thus, the water will not be sucked up against these surfaces to retard the forward motion of the boat while she is running straight ahead but on the contrary will lie in the trough of the water."

The effect of such steps has since been disproven. To the contrary, they have the effect of creating a vacuum and pull as they go through the water. There is no evidence before the court that this non-tilt chine or angled surface at the side of a boat was original in the Hickman patent but it was only incorporated in the Apel boat as a safety feature and added nothing to the desire for speed except that by the particular manner in which Apel designed and constructed such chine it did not detract from the speed when the boat was running straight as the Hickman design did.

Now as to the Brush patent concerning the planing surfaces. The bottom of the Brush boat was constructed with three planing surfaces of approximately the same level, one fore and two aft, the one fore being in the middle of the boat running from the bow to about midships and the other two on each side of the boat and running from midships to the stern. These planing surfaces are at a lower level than the other portions of the bottom so that the boat rides upon these planing surfaces in the water. With the fore planing surface stopping at about midships and immediately in back of it and to the stern the bottom was at a higher level and bounded on each side by the rear planing surfaces, the movement of the boat over the surface of the water in this fashion tended to create a vacuum of air or pull upon the underside and is explained by the inventor as follows: "* * * In order to prevent any suction building up back of the step 10 that might tend to aggravate the following wave and to draw water rearwardly thereof up into contact with the surface 17, or otherwise interfere with the free passage of the boat through the water, bleeder tubes such as 20 may be provided for allowing the free passage of air from above the level of the water to the bottom of the surface 17 immediately to the rear of the step 10."

The attempt to overcome this difficulty as above described was unsuccessful, however, because Apel testified that he was familiar not only with the Brush patent but also with the boat constructed and tested thereunder and that it was a failure. The vacuum or pull thus created would build up and then release spasmodically first from one side of the stern and then from the other causing an increasing sidewise rocking to such an extent that the operator was faced with the election of diminishing his speed or run the risk of overturning.

On the other hand, the Apel design met with success to such an extent that by the change of hull design alone to conform to

the Apel patent the speed of a boat was increased from 40 to 59 miles an hour.

In addition, this design (the Apel patent) was used and followed by Sir Malcolm Campbell, the noted English racing authority, for his "Miss Blue Bird II" which broke all previous known speed records. This testimony is undisputed.

Speaking of anticipation, Judge Mahoney speaking for the First Circuit in Lincoln Stores, Inc., v. Nashua Mfg. Co., 157 F.2d 154, said at page 160: "* * The prior art will not anticipate a patent for a combination unless it discloses 'all the elements of such combination, or their mechanical equivalents, functioning in substantially the same way to produce substantially the same result'; *and a prior patent does not anticipate a subsequent patent where the prior patent failed to solve the problem which the subsequent patent solves successfully.*" (Emphasis supplied.)

It is undisputed here that the Brush patent was unsuccessful and the Apel one highly successful.

As was said by Judge Bland of the Court of Customs and Patent Appeals in Re Holt, 162 F.2d 472, 474, at page 475, 34 C.C.P.A., Patents, 1129: "It makes little difference, as we view the issue, whether any element is new or old if the combination of the elements into a completed structure involves invention. See Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 325, 332, 29 S.Ct. 503, 53 L.Ed. 816. It is well settled that a combination of old elements which produces new, useful and unobvious results may involve invention and constitute patentable subject matter. This question always depends upon the particular facts of the case under consideration."

And as was said by Judge Bland for the same court in Re Smith, 161 F.2d 274, at pages 278, 279, 34 C.C.P.A., Patents, 1007: "Of course, it is well-settled law that if one selects from the prior art well-known features in such a manner as to produce new, unobvious, unexpected and useful results which are not merely the accumulations of the good results taught by the art he has made an invention. Frequently combinations of old elements in new structures have resulted in inventions of a high order."

A yardstick was laid down by Judge Dobie, speaking for the Fourth Circuit in City of Grafton v. Otis Elevator Co., 166 F.2d 816, at page 817: "* * * The authorities establish the following propositions respecting the patentability of devices or processes of this character: (1) that a combination is patentable if it produces new and useful results, although all its constituents were well known and in common use before it was made, provided the results are a product of the combination, and not a mere aggregate of several results, each the product of one of the combined elements; (2) if it produces a different force, effect, or result in the combined forces or processes from that given by their separate parts, and a new result is given by their union; (3) if it either forms a new machine of distinct character or formation, or produces a result which is not the mere aggregate of separate contributions, but is due to the joint and co-operating action of all the elements; (4) when the several elements of which it is composed produce by their joint action either a new and useful result, or an old result in a cheaper or otherwise more advantageous way."

It seems to the writer that the most concise statement on the subject was laid down by the Supreme Court on December 4, 1950, when Mr. Justice Jackson said in the matter of Great Atlantic and Pacific Tea Company v. Supermarket Equipment Corporation, 340 U.S. 147, 71 S.Ct. 127, 130: "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. *The function of a patent is to add to the sum of useful knowledge.* Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented

164

here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men." (Emphasis supplied.)

Has not the patentee (Apel) in the present case designed and presented to the craft the two new ideas of trapping air under the boat and making it move thereunder and releasing it without creating a vacuum or drag, and the construction of stabilizers or pontoons, light in weight, outside the hull to provide a planing surface, and at the same time aid in the trapping of air?

I trust this will be sufficient explication. For the reasons expressed herein the patent will be held to be valid and the plaintiff entitled to recover. The attorneys are directed to submit proposed findings.