39 C.C.P.A. (Patents)

## In re KAUFMANN.

### Patent Appeal No. 5819.

United States Court of Customs
and Patent Appeals.

Argued Nov. 6, 1951.

Decided Dec. 18, 1951.

Harvey B. Jacobson, Washington, D. C. (Schubert A. Stricklett and Clarence A. O'Brien, Washington, D. C., of Counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office. The board's decision affirmed

the holding of the Primary Examiner rejecting as unpatentable claims 13 and 14, the only remaining claims in appellant's application for a patent on a "Testing Arrangement For Electrical Appliances." The claims were rejected as unpatentable over a combination of references cited by the examiner.

Appellant's device comprises a test circuit arrangement for testing an electrical appliance having a heating element and a thermostatic switch for controlling the supply of current to this element. This test circuit arrangement, as disclosed by appellant, includes a first branch having a conventional male plug, a conventional manually operated switch, a conventional female plug, and the primary coil of a transformer connected in series in the order recited. The secondary coil of the transformer supplies current to a relay winding which, when energized, actuates a resilient arm which is pivotally mounted adjacent one end of the relay coil. The free end of this arm has a contact thereon which, through pivotal movement of the arm, may be brought into alternate engagement with either a front or back contact, these latter contacts being suitably mounted adjacent the opposite sides of the free end of the arm. There is a small spring attached to the arm at a point between its pivot end and the relay core so as to bias the arm away from the relay and into normal engagement with the so-called back contact. The contact on the pivotable arm is connected by suitable wiring to the first branch at a point between the manually operated switch and the female plug. The front contact is connected in series with a colored bulb (referred to, for convenience, as the red bulb); the back contact is connected in series with a bulb of a different color (referred to, for convenience, as the green bulb). These bulb and contact circuits are in parallel arrangement and are suitably connected to the first branch circuit so that current flows through one or the other depending on whether the contact on the pivotable arm is in engagement with the front or the back contact. All these elements are mounted on any suitable member.

The device is used as follows: The male plug is inserted in any suitable commercial source of alternating current; the appliance to be tested (appellant discloses, as an example, a common flatiron having an adjustable thermostatic heat control switch) is connected in series with the other elements of the first branch circuit by plugging it into the female plug. When the manual switch is closed, if no current flows through the appliance, current will flow through the back contact and the green bulb. This indicates (1) that the power source is supplying current, and (2) that the thermostatic switch is open and/or the appliance operating element is not functioning. However, assuming the thermostatic switch of the appliance to be closed and its operating element to be functioning, when the manually operated switch is closed, current will flow through the first branch series circuit. The current flowing though the primary transformer coil in this first branch causes the transformer secondary coil to supply current to the relay winding. This in turn energizes the relay so that it will pull the pivoted arm towards it against the pull of the spring, bringing the contact on the arm into engagement with the front contact and thereby causing the green bulb to go out and the red bulb to light; at the same time, due to the cyclic nature of alternating current, the interaction of the relay and the spring on the resilient arm produces a hum thus giving an additional audible signal. These signals serve to indicate (3) that the operating element of the appliance is functioning and that the thermostatic switch is closed. If desired, the duration of these signals may be timed to determine (4) how long the adjustable thermostatic switch remains closed at any given setting of the switch.

The appealed claims read as follows:

"13. For use in testing electrical appliances having an automatically thermostatically controlled switch and having a connector, a testing circuit having two branches and having a first connector for connecting said testing circuit with a source of alternating current and a second connector for connecting said testing circuit with an appliance to be tested, a manual testing switch in a first branch of said testing circuit, current responsive control means operatively connected with the second branch

of said testing circuit, two signal circuits connected in parallel with the first branch of the testing circuit between said manually operated testing switch and said second connector, signal producing devices in said signal circuits, said devices being controlled for alternative operation by said current responsive control means selectively opening and closing a resilient switch in said signal circuits; one of said devices in a first signal circuit indicating the presence of a voltage without current flow in an appliance under test, the other device in the second signal circuit indicating the presence of current flow in the testing circuit and in an appliance under test, the successive alternative operation of said devices indicating correct operation of an automatic thermostatically controlled switch in an appliance under test.

"14. The structure of claim 13 including spring means continuously urging said resilient switch to close said first signal circuit, said resilient switch thus forming an additional signalling means actuated when there is current flow in said testing circuit, said additional signalling means being audible."

The references relied on by the Patent Office are: Hunt 1,461,215 July 10, 1923; Varley 1,485,098 Feb. 26, 1924; Connell et al. 2,194,820 Mar. 26, 1940; Stearns 2,304,513 Dec. 8, 1942.

The following references were cited in the examiner's statement as cumulative references: Geiger 1,704,736 Mar. 12, 1929; Ashworth 2,250,214 July 22, 1941; Lowell 2,424,243 July 22, 1947.

The patent to Connell et al. shows a cooking and heating utensil having a resistance heating element. This reference discloses a circuit having a conventional male plug, a pushbutton switch, an adjustable thermostatic switch, a primary transformer coil, and the said resistance heating element in series. The transformer secondary coil supplies current to an indicating bulb. When the male plug is inserted in any convenient power outlet, upon operation of the switch, current will of course flow through all the elements of the series circuit. The voltage induced by this in the transformer secondary coil causes the indicator light to go on. When the utensil has been heated sufficiently, the thermostatic switch opens thus interrupting the flow of current in the series circuit and causing the indicator light to go out, thereby indicating that the proper temperature has been reached.

The patent to Stearns discloses an electrical testing apparatus. Among other things, this patent shows a relay-operated pivoted arm having a contact on its end that may alternately engage one of two contacts which are connected to two parallel signal circuits. One of these circuits has a green bulb; the other has a red bulb and an audible indicator such as a bell or horn. Through appropriate action of the relay, the green bulb indicates that test results are as desired, whereas the red bulb and audible indicator indicate undesirable test results. This patent also discloses incidentally that, if desired, another bulb may be connected across the line between the main switch and the testing apparatus to indicate whether or not the power source is supplying current.

The patents to Hunt and Varley show relay-operated, contact-closing, pivoted arms which are spring-biased in a manner very similar to that in appellant's device, the relay-operated arms in these patents being also used to produce an audio tone.

The examiner rejected claims 13 and 14 as unpatentable over Connell et al. in view of Stearns. The Connell et al. patent was relied on as showing an indicating circuit having substantially the same elements operating in essentially the same manner as in applicant's device. The examiner was of the opinion that it would not require invention to substitute the relay-operated, two bulb, indicating device of Stearns in place of the single indicating bulb shown in Connell et al. The board agreed with the examiner's holding, suggesting in its opinion a possible way that this might be done. Claim 14 was further rejected in view of Hunt or Varley. The board noted that it is common practice to employ spring means such as shown in Hunt and Varley for the purpose of biasing the armature of a relay. Both the examiner and the board stated that it is well known that a relay energized by alternating current will inherently produce an audible signal unless measures are taken to

prevent vibration of the relay armature. Appellant has not controverted this statement and the court will accept such unchallenged statement as true. In re Valko, 173 F.2d 275, 36 C.C.P.A., Patents, 899, and cases cited therein.

The Examiner stated that the cumulative references were cited " * * * to emphasize the obviousness of connecting a relay to energize one or the other of two indicator bulbs." Since these were not included in the record before us, it must be assumed that they disclose the features for which they were cited. In re Pirani, 75 F.2d 223, 22 C.C.P.A., Patents, 1002; In re Kluter, 92 F.2d 906, 25 C.C.P.A., Patents, 730.

Appellant conceded before the Patent Office tribunals that none of the elements in his device are in themselves novel. Moreover, in his brief before this court, appellant admitted that the substitution suggested by the board would produce a similar circuit; but he argues there is still no second connector such as is recited in the claims. Neither the board nor the examiner discussed this second connector. However, the Solicitor of the Patent Office urged this court to take judicial notice of the fact that it is quite common to use more than one conventional plug in making up an electrical circuit, citing as a common example the ordinary commonplace extension cord. The court does take judicial notice of that fact.

Appellant, although making the admissions noted above, contends that the prior art does not disclose a device capable of performing each of the four functions identified as (1), (2), (3) and (4) in the discussion above of the intended mode of operation of appellant's apparatus. Since the substitution of the relay-operated indicating system of Stearns for the indicating bulb of Connell et al., as suggested by the board, will produce a circuit similar to appellant's, as he himself admits, the court is of the opinion that such circuit can be used to obtain the same indications. We do not deem such use inventive, particularly in the light of the fact that the device of Connell et al. is an analogous indicating device capable of providing similar information.

The contentions discussed above are ancillary to appellant's basic contention. Appellant's basic contention, which he urges most strongly, is that he has provided a new and useful combination of old elements which can perform functions not capable of being performed by any single or individual device shown in the prior art. "This in itself," he argues, "would appear to assure patentability of the device."

That there may be a rejection of claims based on a combination of several patents, taking specific features from each, is so well settled that we believe an elaborate discussion on this point is unnecessary. In re Kamlet, 185 F.2d 709, 38 C.C.P.A., Patents, 776; In re Smith, 161 F.2d 274, 34 C.C.P.A., Patents, 1007. It is not necessary that a complete disclosure be contained in a single reference. In re Streckert, 167 F.2d 1010, 35 C.C.P.A., Patents, 1148; In re Horney, 161 F.2d 271, 34 C.C.P.A., Patents, 968.

Appellant has cited several cases which hold that a new combination of old elements may be patentable. This is, of course, well settled. But not all new combinations are patentable. It is equally well settled that if a new combination of old elements is to be patentable, the elements must cooperate in such manner as to produce a new, unobvious, and unexpected result. It must amount to an invention. In re Smith, 161 F.2d 274, 34 C.C.P.A., Patents, 1007, cited supra. In the absence of invention, utility and novelty are not sufficient to support the allowance of claims for a patent. In re Levin, 178 F.2d 945, 37 C.C.P.A., Patents, 791; In re Hass, 141 F.2d 122, 31 C.C.P.A., Patents, 895. It is trite to say that invention is difficult to define positively. However, we believe it to be a settled rule that it is not invention to produce a device which is within the realm of performance of a skilled mechanic in the ordinary progress of producing a device required to effectuate a given result. See the discussion with extensive citation of cases in "Walker on Patents," Deller's Edition, 1937, and 1951 Cumulative Supplement, at pages 138–139

and 142. It is our opinion that this rule is implicit in the holding of In re Smith, 161 F.2d 274, 34 C.C.P.A., Patents, 1007, cited supra, which case involved a situation analogous to that of the case at bar.

In the light of the foregoing, it appears to us that the essential question in this case is whether or not appellant, in producing his device by combining admittedly old elements, exercised inventive faculty sufficient to support the allowance of claims for a patent. We are in agreement with the Board of Appeals that he did not. The old elements do not perform any new or unexpected functions in appellant's device; the results obtained from this allegedly new combination do not impress this court as being unobvious or unexpected. We should like to note that if there were any doubt, the concurrent findings of obviousness or lack of invention by the tribunals of the Patent Office would be persuasive, although not conclusive, upon this court, since the Patent Office tribunals presumably are familiar with the advancement of the art. In re Smith, 161 F.2d 274, 34 C.C.P.A., Patents, 1007, cited supra. However, the court entertains no doubt in the case at bar.

In view of the discussion hereinbefore set out, the decision of the Board of Appeals as to claims 13 and 14 is affirmed.

Affirmed.