**Application of Verle H. ERICKSON.**
**Patent Appeal No. 7359.**

United States Court of Customs
and Patent Appeals.
April 15, 1965.

Arthur J. Hansmann, Racine, Wis., for
appellant.

Clarence W. Moore, Washington, D. C.
(George C. Roeming, Washington, D. C.,
of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, and
RICH, MARTIN, SMITH and ALMOND,
Judges.

ALMOND, Judge.

Verle H. Erickson appeals from the
decision of the Board of Appeals affirm-
ing the examiner's refusal to allow
claims 15 through 20 in appellant's patent
application entitled "Method and Ap-
paratus for Carburizing Metal." [1] No
claim was allowed.

The claimed invention is a method of
hardening steel in the presence of a
carburizing gas and is sufficiently de-
scribed in appellant's brief as follows:

"* * * a gauge pressure of
from one to fifteen pounds is selected
and maintained in a furnace wherein
carburizing gas is released and the
carburizing temperature of approx-
imately 1700 degrees F. is provided.
The process is continued for a given
length of time depending upon the
depth of case hardness desired in the
steel. Thus, if the pressure be 10
PSI and the desired case depth be
.030 inches, then the carburizing
temperature and pressure would be
maintained for approximately 15
minutes to obtain the depth men-
tioned. Thus the application of
pressure to the carburizing gas and
maintaining the pressure through-
out the process is deemed to be
novel."

Appellant asserts that one problem in
case hardening has been the undesir-
able "grain growth" resulting when
high temperatures are used to effect a
fast process and that he has overcome
this problem.

The application states:

"It is a particular object of this
invention to provide apparatus and a
method for carburizing wherein the
time heretofore required can be con-
siderably reduced without sacrific-
ing results such as uniformity of

---

1. Serial No. 811,959 filed May 8, 1959.

carburization and depth of carburizing in so-called case carburizing."

Claim 18 is illustrative:

"The combined method of carburizing and hardening a ferrous metal, comprising disposing said metal in a furnace and exposing said metal to an electrical induction wire and evacuating the gas from said furnace, injecting a carburizing gas into said furnace at a selected gauge pressure of from two pounds per square inch to fifteen pounds per square inch and surrounding said metal with the pressurized said carburizing gas, electrically energizing said wire and thereby heat said metal to a gas carburizing temperature of substantially 1650 degrees Fahrenheit for a predetermined time, maintaining said selected gauge pressure during said predetermined time, and discontinuing the flow of electrical current in said wire and simultaneously quenching said metal for hardening same while it is at said temperature."

The references relied on are:

Evans 2,565,957 August 28, 1951
Tauber 2,842,352 July 8, 1958
Fennell (British) 114,446 March 27, 1918
Metal Progress, Vol. 70, No. 6, Dec. 1956,
 pp. 144–146

The examiner cited *Carburizing* [2] as showing that carburizing under pressures from one ounce above atmospheric to 15 psi and more has been common practice. This reference, however, was neither cited nor mentioned by the board in its decision.

Evans shows surface hardening of ferrous metal work pieces by heating with an induction coil with immediate quenching by a device disposed around the heating coil.

Tauber discloses a carburizing apparatus comprising housing means, exhaust and inlet means, and heating means.

**2.** Published by ASM, comprising papers related to the symposium on carburizing presented before the ASM (10th convention at Atlantic City, N. J., October 18–22, 1937. Book received in Patent Office May 4, 1942.

Fennell teaches a process of gaseous carburizing of ferrous metal conducted under elevated pressure, with quenching immediately following the carburizing. The patentee states that "pressure of the gas or vapour may vary but a pressure of the order of about fifteen pounds to the square inch has given good results * * *." Fennell also teaches that use of elevated pressure effects "a better, quicker and more effective and uniform" case-hardening.

Metal Progress describes "completely automatic equipment for carburizing and direct quenching which employs high-frequency induction heating * * *." The reference shows that the usual temperature is 1700°F.

The examiner rejected claims 15–18 and 20 as unpatentable over Metal Progress in view of Fennell alone or also in view of Evans. The examiner pointed out that Metal Progress teaches a method of fast carburizing a ferrous metal. Metal Progress discloses the steps of disposing the metal in a furnace, introducing a carburizing gas in the furnace and heating the metal to a gas carburizing temperature and quenching the metal. The depth of carburizing desired is related to the length of time carburizing temperature is applied. The reference shows the desirability of rapid carburizing which is achieved by increasing the absolute value of the environmental variable of temperature. It is further noted that Fennell teaches that rapid carburizing is desirable and is achieved through increase of the absolute value of the environmental variable of pressure. The examiner asserted the position that:

" *. * * a skilled artisan, practicing the process of *Metal Progress* would be led to increase the pressure therein according to the teachings of Fennell, given the suggestion of Fennell that carburizing under increased pressure will increase the rate thereof, the same

object that *Metal Progress* seeks to achieve. * * * "

Appellant argues that his process and apparatus for case hardening in a very short time avoids "undesirable grain growth." This alleged advantage is not disclosed in appellant's specification nor is there any proof of record relating to same. In this connection, the examiner, in view of the prior teachings of Metal Progress and Fennell, reasoned that a skilled artisan would know that increase of the variables, temperature or pressure, above atmospheric would increase the carburizing rate and would therefore be led to carburize under pressure at normal carburizing temperatures rather than work at abnormally high carburizing temperatures, to avoid undesirable grain growth which occurs at high temperatures.

Appellant contends that while Fennell discloses carburizing in a high pressure vessel, the pressure is not of the magnitude disclosed by appellant, nor is it controlled or maintained as is done in appellant's process and apparatus.

As we have noted, Fennell states that "a pressure of the order of about fifteen pounds to the square inch has given good results * * *." It is further noted that Fennell discloses that a "safety valve may be provided * * * to *prevent excessive gas pressure* being set up in the tube." (Emphasis supplied.) We agree with the examiner, as did the board, that this teaching clearly shows that the pressure of 15 psi has been controlled throughout the carburizing process and that the safety valve performs that function or performs a back-up function to prevent equipment damage should another control device fail.

Claims 15, 16 and 18 are limited to a pressure of from two to fifteen pounds per square inch. These pressure limitations would appear clearly readable on Fennell's "of the order of about fifteen pounds to the square inch." We agree with the solicitor that the phrase "of the order of about" would embrace pressures somewhat less than fifteen pounds

and thus meet the noted pressure limitations.

Claims 19 and 20 recite no maximum pressure, the former calls for a pressure of "approximately at least two pounds per square inch" and the latter recites a pressure of "at least one pound per square inch." The pressure limitations of these claims are clearly readable on Fennell's pressures of about fifteen pounds to the square inch.

Claim 17 recites a pressure of approximately ten pounds per square inch which is less than that disclosed by Fennell for "good results." The examiner held that the pressure recitation of claim 17 did not "patentably distinguish" from Fennell. The examiner reasoned that no unexpected result has been alleged for any given pressure above atmospheric and that "there is none," and that the results obtained are directly proportional to the pressure used. The examiner observed that no given pressure is critical and that claim 20 purports to limit the pressure only by the minimum of 1 psi. Relying on the *Carburizing* text, the examiner noted that it states:

" * * * clearly and unequivocally that pressures 'up to 15 PSI' " * * * have been used in common practice, with higher pressures yielding increased carburizing activity as opposed to lower pressures. * * * "

 We have noted the board's failure to list or comment on the *Carburizing* publication. Assuredly, the board did not reverse the examiner in his application of this reference. We conclude, therefore, that the board, in affirming the decision of the examiner in rejecting the claim on stated grounds and a named reference without mention either of the grounds or the reference, has in legal effect affirmed on the grounds and reference cited by the examiner. In re Boyce, 144 F.2d 896, 32 CCPA 718. There is nothing before us persuasive of error in the examiner's application of the cited reference. We must, therefore, assume that the reference disclosed the feature for which it was cited. In

re Kaufmann, 193 F.2d 331, 39 CCPA 769.

In our view, there is nothing in Fennell to suggest to one skilled in the art that at a pressure of 10 psi the results would be different other than in degree from those at 15 psi.

The examiner rejected claim 19 as unpatentable over Tauber, who discloses an apparatus for carburizing metal comprising housing means, exhaust means and inlet means for evacuating and introducing a carburizing gas therein, and heating means. We agree with the board that the addition of valves and a pressure gauge to Tauber's carburizing furnace, if required, would be obvious to one skilled in the art.

Claim 18 calls for "discontinuing the flow of electrical current * * * and simultaneously quenching said metal * * *." The board noted that both Fennell and Metal Progress quench after carburizing and appellant discloses no unobvious result for this variation.

Evans discloses that "When the workpiece has reached its critical temperature, the coil is *deenergized* and quenching fluid under pressure is introduced into the quenching jacket" and that "the coil offers no impediment to the flow of quenching fluid, the fluid flows freely from the quenching jacket into the opening of the coil against the workpiece." (Emphasis sunpplied.)

It appears therefore that Evans meets the "simultaneously quenching" limitation of claim 18.

Our review of the record and consideration of appellant's argument and contentions do not convince us of reversible error on the part of the board in its holding that the appealed claims are unpatentable over the cited prior art.

The decision of the Board of Appeals is affirmed.

Affirmed.

SMITH, J., concurs in the result.